Filed 7/20/15  Stone v. O'Mara CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| CHRISTOPHER M. STONE,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>SHAE O'MARA,<br><br>    Defendant and Respondent. | F068653<br><br>(Super. Ct. No. 402688)<br><br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Stanislaus County.  Jack M. Jacobson, Judge.

Christopher M. Stone, in pro. per., for Plaintiff and Appellant.

Stockton Law Center and Peter Koulouris for Defendant and Respondent.

-ooOoo-

In child custody proceedings between Christopher M. Stone (the father) and Shae O'Mara (the mother) regarding their minor child, the father appeals from the trial court's order determining among other things that (1) the mother shall have sole physical custody, (2) the father's visitation of the child shall be supervised, and (3) the father must submit to a psychological evaluation by a clinical psychologist at a cost of $1,500 as a precondition to seeking any future modification of the custody or visitation arrangement. The father contends the trial court failed to consider his inability to afford the expense of the psychological evaluation and, therefore, the requirement that he obtain and pay for the evaluation as a condition on his right to request any modification of the parenting plan constituted an abuse of discretion. We agree and reverse that portion of the trial court's order. The father also contends there was insufficient evidence to support the trial court's custody and visitation arrangement. We disagree and hereby affirm the custody and visitation determination as within the trial court's broad discretion. In summary, we reverse the discrete portion of the trial court's order that required the father to pay the expense of the psychological evaluation and made said requirement a condition on seeking any modification of visitation or custody, but in all other respects we affirm the judgment and order of the trial court.

## FACTS AND PROCEDURAL HISTORY

The parties' minor child, a daughter, was born in 2007. In 2009, after family law proceedings were initiated and following mediation, an initial custody order was entered that the parties were to have joint legal and shared physical custody. The father's custodial time included alternate weekends as well as alternate midweek visitation. In July 2012, the mother requested a modification to accommodate the child's upcoming school schedule, which would begin in the fall of that year. Apparently, the mother believed the midweek visits to the father would interfere with the child's school schedule. The trial court granted the mother's request.[1] On September 14, 2012, the trial court

---

[1]    The father was not present at this hearing, choosing instead to launch an unsuccessful challenge to the mother's service of notice of the petition for modification.

2.

ordered that "the parties shall have joint legal and shared physical custody with the Mother designated as the primary caretaker." The father continued to have custodial time on alternate weekends, but not during midweek.

The father subsequently moved to set aside the above custody order and also objected to the custody recommendations of the child custody counselor. On December 12, 2012, the trial court denied the father's motions, but set a "long cause" evidentiary hearing for August 13, 2013, "on the Father's desire to have 50-50 custody, counter to the counselor's recommendation."

On March 19, 2013, the mother filed an application for temporary protective orders and for emergency orders to modify custody based on an incident in March 2013. The father filed opposition to the application. The trial court denied the requested temporary relief, postponing action until the hearing. At the hearing on April 10, 2013, the trial court ordered that "This matter is referred to a focused Family Court Services Evaluation of limited scope, appointed under Family Code Section[] 3110, et. seq., Evidence Code Section 730 at 800 11th St. Modesto Ca. The Father, Mother and child are to appear on 4/17/13 at 2:00 p.m. and any further meetings as directed by the Evaluator." Lorrie Freitas, M.F.P., was appointed to serve as the Family Court Services Evaluator (the Evaluator). For the meantime, the trial court ordered that "[t]he parties shall have joint legal custody with the Mother having *sole* physical custody." (Italics added.) Further, the father's visitation with the child (on alternate weekends) was to be *supervised*: "All contact of the child with the Father, including during transportation, shall be under the direct supervision and in the physical presence of the Father's wife, Christina .…" Both parents were referred to Dr. Ed Moles, a clinical psychologist, for a psychological evaluation. The child was referred to Dr. Debra Johnson. The matter was continued to May 22, 2013, for further hearing to consider the Evaluator's report.

The Evaluator's report was submitted on May 22, 2013, and recommended to the trial court as follows: "1. The parties shall have joint legal custody with the Mother having sole physical custody. [¶] 2. All contact of the child with the Father, including during transportation, shall be under the direct supervision and in the physical presence of

3.

a supervisor at Sierra Vista. The cost shall be paid by the Father. [¶] 3. The Father is referred to Dr. Ed Moles. The focus of the counseling shall be Psychological Evaluation. The Father shall participate and cooperate fully in the counseling at the direction of the counselor. The cost of the counseling shall be paid by the Father. [¶] 4. The child is to continue counseling with Debra Johnson. The focus of the counseling shall be child issues. The parties shall participate and cooperate fully in the counseling at the direction of the counselor. The cost of the counseling shall be paid equally among parties."

The rationale set forth in the Evaluator's report for the above recommendations included the Evaluator's investigation of the March 2013 incident reported by the mother and the child's apparent fear of the father. Concerning said incident, the Evaluator considered the various accounts. The mother asserted that, in picking up the child at the father's home, the child was crying and very afraid because the father had aggressively spanked her "hard on the back" in response to something she (the child) said about the mother, while the father also uttered harsh and inappropriate comments about the mother, the child's sister and stepfather. The father had admitted to spanking the child, but said it was because the child used the "F" word, and he denied doing anything wrong or injurious to the child. The Evaluator also considered her own interview sessions with the mother and the child, along with the opinions of Debra Johnson, with whom the child had been meeting for counseling. The Evaluator's report indicated the father failed to appear at the designated time for the Evaluator's interview of the parents and child for purposes of the evaluation. The Evaluator proceeded with those particular interviews in his absence.

On May 22, 2013, the parties appeared before the trial court for a hearing regarding the Evaluator's report. The trial court adopted the recommendations in the Evaluator's report, but set the matter for a long cause evidentiary hearing on calendar for August 13, 2013, to fully consider the father's objections to the recommendations contained in the report.

On August 13, 2013, the trial court commenced the long cause hearing of the father's objections to the Evaluator's recommendations. At the time of the proceedings in the trial court, the parties' minor child was six and one-half years old. The trial court

4.

heard testimony from the father, the mother, other family members, the Evaluator, and Sandra Centeno (a licensed clinical social worker who was counseling the father), among others.

On August 26, 2013, the trial court issued its tentative decision on the issues. The tentative decision adopted the Evaluator's recommendations in toto, based on the trial court's finding that "it is in the best interest of the minor child" to do so. The trial court explained: "Based upon the evidence presented at the long cause hearing and [the father's] demeanor, attitude and behavior during the long cause hearing, the Court has concern for the safety of the minor child while in [the father's] care. The Court believes that [the father] needs to follow through and obtain the psychological evaluation." The trial court noted in the tentative decision that although the father "claims he cannot obtain the funds to pay for this evaluation, the Court believes he can obtain the funds." In that regard, the trial court noted that the father had apparently been able to borrow money from his mother at some point in the past to meet his living expenses.

Based on the tentative decision, the trial court ordered that the mother would be granted "sole physical custody," and the father would have "supervised visits at Sierra Vista." As to the psychological evaluation, the trial court found that the father's mental condition was "a significant issue in this custody proceeding." Therefore, the trial court required the father to submit to a psychological evaluation performed by Dr. Moles as previously ordered or by another licensed clinical psychologist, *at the father's expense*. Moreover, the trial court held that the father "will not be permitted to bring the matter back to court to modify either custody or visitation until he submits to the psychological evaluation … and provides the court with a written report from the psychologist summarizing the evaluation and the psychologist's findings."

On September 3, 2013, the father filed written objections to the trial court's tentative decision. He asserted certain findings were in error, or were not supported by the evidence at the hearing. He pointed out to the trial court that he "never objected to appearing for a mental evaluation" except on the basis that he could not afford it. He also challenged the trial court's notion that his mother would pay for the evaluation, since he

had testified that "my mother would *not* loan me money for the assessment, and she shouldn't be expected to loan me the money."  (Italics added.)

On September 12, 2013, in response to the father's written objections to the tentative decision, the trial court corrected two inadvertent errors appearing in the tentative decision (i.e., regarding *legal* custody and the child's full name), but did not address any other concerns raised by the father.  The trial court held that, as so revised, its tentative decision constituted its final statement of decision on the issues.  The father's notice of appeal followed.

## DISCUSSION

### I.       Standard of Review

"California's statutory scheme governing child custody and visitation determinations is set forth in the Family Code ….   Under this scheme, 'the overarching concern is the best interest of the child.'  [Citation.]"  (*In re Marriage of Brown & Yana* (2006) 37 Cal.4th 947, 955; see Fam. Code, §§ 3011, 3020, 3040.)

For purposes of making an initial or temporary custody determination, the trial court and the family have the widest discretion to choose a parenting plan that is in the best interest of the child.  (*Montenegro v. Diaz* (2001) 26 Cal.4th 249, 255; *In re Marriage of Burgess* (1996) 13 Cal.4th 25, 31–32.)  When the parents are unable to agree on a custody arrangement, the trial court must determine the best interest of the child by setting the matter for an adversarial hearing and considering all relevant factors, including the child's health, safety, and welfare, any history of abuse by one parent against any child or the other parent, and the nature and amount of the child's contact with the parents.  (*In re Marriage of Brown & Yana*, *supra*, 37 Cal.4th at pp. 955–956.)  Once a final or permanent custody arrangement is determined by the trial court, the parent seeking to alter the order for legal and physical custody can do so only on a showing that there has been a significant "'change of circumstances'" indicating that a different custody arrangement would be in the child's best interest.  (*Id.* at p. 956 [noting that changed circumstances test is a variation on the best interest standard and recognizes the need for stability in custody arrangements]; *In re Marriage of Burgess*, *supra*, 13 Cal.4th at p. 37.)  However, if a

requested modification would only alter the parenting schedule or the visitation arrangements, but would leave the existing custody the same, the change of circumstances rule does not apply and the trial court simply considers the ordinary best interest of the child standard. (*In re Marriage of Lucio* (2008) 161 Cal.App.4th 1068, 1077–1080.)

Appellate review of custody and visitation orders is highly deferential. "The standard of appellate review of custody and visitation orders is the deferential abuse of discretion test. [Citation.] *The precise measure is whether the trial court could have reasonably concluded that the order in question advanced the 'best interest' of the child.* We are required to uphold the ruling if it is correct on any basis, regardless of whether such basis was actually invoked. [Citation.]" (*In re Marriage of Burgess*, *supra*, 13 Cal.4th at p. 32, italics added; see *In re Marriage of LaMusga* (2004) 32 Cal.4th 1072, 1087–1088.) "The test is not whether this court would have made the same order or whether the trial court could have reasonably made some other order, but 'whether the trial court could reasonably have concluded that the order in question advanced the "best interest" of the child.' [Citation.]" (*Lester v. Lennane* (2000) 84 Cal.App.4th 536, 595.) "'[I]t is generally accepted that the appropriate test of abuse of discretion is whether or not the trial court exceeded the bounds of reason, all of the circumstances before it being considered.' [Citation.]" (*In re Marriage of Loyd* (2003) 106 Cal.App.4th 754, 759.)

To the extent an appealing party challenges the sufficiency of the evidence undergirding the trial court's custody ruling, we affirm the trial court's ruling if it is supported by any substantial evidence. (*Catherine D. v. Dennis B.* (1990) 220 Cal.App.3d 922, 931.) "'"An appellate tribunal is not authorized to retry the issue of custody, nor to substitute its judgment for that of the trier of facts. Only upon a clear and convincing showing of abuse of discretion will the order of the trial court in such matters be disturbed on appeal. Where minds may reasonably differ, it is the trial judge's discretion and not that of the appellate court which must control." [Citation.]' [Citation.]" (*Ibid.*)

Finally, a judgment or order of a lower court is presumed to be correct on appeal, and all intendments and presumptions are indulged in favor of its correctness. (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133.) Because of this presumption of

correctness, error must be affirmatively shown. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) Thus, an appellant must affirmatively demonstrate prejudicial error based on sufficient legal argument supported by citation to an adequate record. (*Yield Dynamics, Inc. v. TEA Systems Corp*. (2007) 154 Cal.App.4th 547, 556–557.)

## II. The Custody and Visitation Arrangement

Following the August 13, 2013, long cause hearing, the trial court granted the mother sole physical custody of the parties' minor child and continued to allow only supervised visitation to the father, as recommended by the Evaluator. In the instant appeal, the father challenges the sufficiency of the evidence to support the trial court's custody and visitation order.[2] We review the evidence in the light most favorable to the judgment. (*In re Marriage of Kim* (1989) 208 Cal.App.3d 364, 370; *In re Volkland* (1977) 74 Cal.App.3d 674, 678.) "'All issues of credibility are … within the province of the trier of fact.… All conflicts, therefore, must be resolved in favor of the [judgment].' [Citation.] Moreover, in examining the sufficiency of the evidence to support a challenged finding, we "'… must accept as true all evidence tending to establish the correctness of the finding as made, taking into account, as well, all inferences which might reasonably have been thought by the trial court to lead to the same conclusion." [Citations.] If appellate scrutiny reveals that substantial evidence supports the trial court's findings and conclusions, the judgment must be affirmed.' [Citation.]" (*Catherine D. v. Dennis B*., *supra*, 220 Cal.App.3d at p. 931.)

The evidence relied on by the trial court included the testimony of the Evaluator assigned to the case, Lorrie Freitas. Based on interviews with the child and the mother, and on observations of the parent-child interactions, Freitas testified that the child's primary emotional relationship was with the mother, and that the child felt "safe" in the mother's care but was "fearful" of her father. Freitas was aware of the spanking incident reported by the mother. Freitas testified that the father's "bad things" spoken to the child

---

**2** There was apparently no court reporter to record or transcribe the trial court testimony below. Our understanding of the testimony derives from the trial court's statement of decision and the summaries provided in the parties' briefing.

about her mother and sister were "scaring" the child. In addition, Freitas testified about a counseling session incident in which the father suddenly became aggressive toward her and sought to "escalat[e] the conflict." Based on all that she had ascertained regarding the father's conduct and demeanor, Freitas was convinced that a psychological evaluation was necessary. Her recommendation was that once the father obtained such an evaluation, he could bring this matter back to court to reconsider the supervised visitation. Freitas further testified that, in her opinion, a psychological evaluation would help the father to recognize that certain conduct on his part was adversely affecting his child.

The trial court also relied on the testimony of the mother, who described the child's fear at the time of the March 2013 incident, and reported that the child was still fearful of the father and had ongoing difficulty sleeping. The mother described the father as a "loose cannon" who can be calm in one moment and explode in anger the next. She reported that the most recent episode of the father's explosive anger was in May 2013, when the father approached the mother and her new spouse at an open house function at the child's school and cursed them out with profanity and accused them of paying the judge $150,000. The mother also testified that since visitation has been taking place at Sierra Vista, the child has been more relaxed and confident, less withdrawn and more like her normal self. The mother believed that the then current order should be continued in the child's best interest. The mother expressed her desire that the father undergo the psychological evaluation so "perhaps [the] father can get the help he needs and that this endless custody fight can conclude."

The trial court also acknowledged the testimony of Sandra Centeno, a licensed clinical social worker who was meeting with the father to provide therapy. Centeno's testimony included assertions that the father had significant depression and anxiety. Finally, the trial court relied on its own direct observation of the father's erratic behavior in the courtroom during the long cause hearing, wherein the father, although calm and respectful at times, at other times, when it appeared he was not entirely getting his way in the proceedings, would quickly change his demeanor and become highly combative and disrespectful toward the parties and the court, and during such tirades would simply ignore

9.

the court's numerous admonitions. As a result, the trial court frequently "had to cut off his questioning or terminate his testimony."

The father's testimony at the hearing described his relationship with the child in much more positive terms. He denied saying negative things to the child about the mother, and he expressed his belief that his visitation times with the child had gone very well. He believed that he should be allowed to have a more active role in his child's life. The father acknowledged that he did spank his daughter on one occasion when she was using inappropriate language. On that occasion, he hit her with his open hand on the rear and did not cause any injury to her. Although he did not understand why his parental use of reasonable corporate punishment should be of concern, since the law clearly permits the same, he was willing to refrain from doing so if it meant that increased custody or visitation opportunities would be granted to him. The trial court carefully considered the father's testimony, but ultimately concluded that the mother's version of events was more credible than the father's.

In applying the substantial evidence test, we resolve conflicts and credibility issues in favor of the judgment. Reviewing the matter in the light most favorable to the trial court's judgment, we conclude that there was adequate substantial evidence to support the trial court's exercise of its broad discretion to continue with the supervised visitation arrangement and to grant sole physical custody to the mother. Among other things, the trial court appears to have been concerned by the father's explosive anger, inappropriate comments and the child's concomitant fear. Since the trial court "could have reasonably concluded that the order in question advanced the 'best interest' of the child" (*In re Marriage of Burgess*, *supra*, 13 Cal.4th at p. 32), no abuse of discretion was shown. Accordingly, we uphold and affirm the trial court's ruling on the custody and visitation arrangement.

## III. The Psychological Evaluation

In determining the best interest of the child in custody proceedings, a trial court has discretion to appoint an expert to conduct a custody investigation, examine the parents and children, and file a written confidential report and/or testify at a hearing. (Fam. Code,

10.

§ 3111; Evid. Code, § 730; *In re Marriage of Kim*, *supra*, 208 Cal.App.3d at p. 372.) In *In re Marriage of Kim*, where the family had severe problems due to the appellant's acts of criminal violence, molestation and other physical and verbal abuse, a psychiatric examination of the entire family was deemed necessary to resolve remaining custody and visitation issues that were before the trial court. On appeal, no abuse of discretion was found in ordering the examination. (*In re Marriage of Kim*, *supra*, at p. 372.) We review the trial court's decision to appoint an expert or evaluator for an abuse of discretion. (*In re Marriage of E.U. & J.E.* (2012) 212 Cal.App.4th 1377, 1389.)

Here, the trial court concluded that the father's mental or emotional condition was relevant to the court's assessment of the father's capability to responsibly handle visitation without supervision. Accordingly, the father was ordered by the trial court to submit to a psychological evaluation to be conducted by Dr. Moles or other clinical psychologist. The father objected on the ground of inability to pay. The cost was approximately $1,500. At the hearing, the trial court did not consider or receive any evidence on the father's ability to pay, but simply stated its assumption that the father could get a loan from his mother since he had been able to obtain a loan to cover living expenses in the past. Based on that assumption, the trial court rejected the father's assertion of financial inability. After the trial court issued its tentative decision, the father filed specific written objections thereto, stating that he "never objected to appearing for a mental evaluation except on the basis that [he] could not afford it." The father emphasized that there was no evidence presented at the hearing to support the trial court's finding that he had the financial ability to pay for the psychological evaluation. The trial court never responded to this objection. Despite the father's objection, the trial court stood by its order that "Father will not be permitted to bring this matter back to court to modify either custody or visitation until he submits to the psychological evaluation … and provides the court with a written report from the psychologist summarizing the evaluation and the psychologist's findings."

In the instant appeal, the father claims the trial court abused its discretion by (1) ordering him to pay the expense of the psychological evaluation without any meaningful evidentiary consideration of his actual ability to pay and (2) conditioning his

right to request any modification of the custody or visitation arrangements on first obtaining the same psychological evaluation at his own expense, which the father asserted he could not afford.  We agree with the father on both of these points.

Under Family Code section 3112, subdivision (a), the trial court must "inquire into the financial condition" of a parent and ascertain whether he or she is "able to pay" the expense of an investigation, report, or evaluation that is being undertaken by a court-appointed investigator or evaluator.[3]  Here, the trial court failed to make any evidentiary inquiry into the father's financial condition or his ability to pay, despite the father's specific objection on the ground of inability to pay.  At most, the trial court appears to have assumed that the father's mother would loan him money for the evaluation, but the record does not indicate there was any evidence to support that assumption and, in fact, the father directly challenged the trial court's tentative decision as to that finding—reminding the trial court that he had specifically "testified that my mother would *not* loan me money for the assessment …."  (Italics added.)

On the record before us, we conclude the trial court failed to comply with Family Code section 3112 and, accordingly, the trial court's order that the father pay the expense of the psychological evaluation constituted error.  More than that, the trial court exacerbated this error by *also* conditioning the father's right to seek a reasonable modification of visitation or custody arrangements on his first obtaining (i.e., paying for) the same psychological evaluation.  Considering the fundamental importance of the parent-child relationship, and in light of the lack of evidentiary support on the question of ability to pay, this financial roadblock barring the father's access to the court was a clear abuse of the trial court's discretion under the circumstances.  Accordingly, we reverse

---

[3]   Financial considerations are also considered under Evidence Code section 730 for experts appointed in the family law context.  (See, e.g., *In re Marriage of Laurenti* (2007) 154 Cal.App.4th 395, 403 [construing Evid. Code, § 730 in conjunction with Cal. Rules of Court, rule 5.220(d)(1)(D)].)

12.

those discrete parts of the trial court's overall order.[4] We emphasize that our partial reversal does not affect the trial court's determination of the custody and visitation arrangement, which determination remains intact.

## IV.    Other Issues

Additionally, the father argues that, to the extent the trial court's order obligated him to undergo *ongoing* therapy over an *extended* period of time, the order and the findings set forth therein failed to comply with the special requirements of Family Code section 3190.  Although the trial court's order is not entirely clear, our construction thereof is that the father was only directed to obtain a single psychological evaluation, not ongoing therapy.  Therefore, it is unnecessary to consider the issue of compliance with Family Code section 3190.

At the oral argument of this appeal, the father reiterated his argument that during the long cause hearing in which he contested the evaluator's recommendations, the trial court refused to allow certain testimony or argument and thereby denied him due process.  The father also characterizes much of the testimony presented at that hearing as being objectionable.  We are hampered by the lack of any transcript or other adequate record of those proceedings.  It was the father's burden, as appellant, to provide an adequate record on appeal to substantiate all of the points raised by him.  Since he did not provide such an adequate record, these arguments are rejected.

Beyond what is discussed above, the father's appeal raises in a perfunctory manner a number of other purported issues.  As to such other issues, the father fails to provide more than conclusory assertions, fails to provide adequate legal discussion or authority to demonstrate error, and/or fails to cite to an adequate record.  Since that is the case, we pass over such additional points or treat them as abandoned.  (See, e.g., *Yield Dynamics, Inc. v. TEA Systems Corp*., *supra*, 154 Cal.App.4th at pp. 556–557; *McComber v. Wells*

---

[4]    In so holding, we leave to the discretion of the trial court whether or not to revisit the issue by subsequently addressing the matter of financial ability on remand.

13.

(1999) 72 Cal.App.4th 512, 522–523; *People v. Stanley* (1995) 10 Cal.4th 764, 793; *Landry v. Berryessa Union School Dist*. (1995) 39 Cal.App.4th 691, 699–700.)

## V.    Final Comments

At oral argument, the father stressed his desire to have an increased and more meaningful role in his child's life. He emphasized the fundamental importance of the parent-child relationship as recognized in our jurisprudence, and maintained that his parental rights have been severely limited by the trial court's order, in his opinion without adequate justification being shown, due to an unfair system or bias. In particular, he asserted his belief that the order for supervised visitation at Sierra Vista was unwarranted and should be modified. Although on the limited record before us we have affirmed the trial court's order regarding custody and visitation, we note that the father is free to petition the trial court for a modification of the visitation arrangement. Indeed, the trial court contemplated there would be further hearings regarding supervised visitation, since that was apparently the reason for having the father obtain an evaluation by a licensed clinical psychologist. As to that psychological evaluation, unless on remand ability to pay is shown or other means of payment of that expense is provided, any petition for modification of the visitation arrangement would have to be determined on the basis of other evidence.

## **DISPOSITION**

The portion of the trial court's order directing the father to pay the expense of the psychological evaluation and preconditioning his right to seek modification of visitation or custody on obtaining and paying the expense of the psychological evaluation is reversed. In all other respects, the judgment and order of the trial court is affirmed, including the determination of the custody and visitation arrangement. Each party shall bear their own costs on appeal.

_____
KANE, Acting P.J.

WE CONCUR:


_____
POOCHIGIAN, J.


_____
SMITH, J.

15.